.Raymond Herschoel **JOHNSON**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–18201.

Court of Criminal Appeals of Oklahoma.

June 13, 1973.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Raymond Herschoel Johnson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Case No. CRF–72–1705, for the offense of Assault and Battery with a Deadly Weapon with Intent to Kill, his punishment was fixed at five (5) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial Leroy Faggett testified that on July 18, 1972, he lived at 1532 N.E. 16th Street, Terrace, with his mother, stepfather and defendant, who was his nephew. About 4:30 p. m. Faggett was in the kitchen frying some meat using a long-handled fork. Defendant came through the kitchen and Faggett noticed that he had been drinking. Defendant went to the back of the house where he kept his gun and reappeared shortly at the kitchen door. Defendant said, "Hey man, what's going on, what's happening?" (Tr. 8) Faggett did not reply in that he "didn't fool with him when he was drinking." Defendant kept "nagging at me there and I started toward the door to close the door." Defendant "came out with the pistol and started shooting." He received one grazing type wound in the upper chest and a wound in the left knee. Defendant went into the front yard and continued shooting into the house. Faggett's mother arrived at the scene and the defendant left. Faggett admitted having previous troubles with the defendant and on one occasion he tried to hit the defendant with a hammer. He denied having any weapons in his hand when the defendant started shooting.

Officer Ward testified that he investigated the shooting, talked to Faggett and his parents and observed bullet holes in the kitchen walls. He found five .38 caliber cartridge cases in the front yard.

Detective Snipes testified that he investigated the scene, saw bullet holes in the inside walls and cartridge cases in the front yard. He visited Faggett at the hospital and observed a grazing type wound in his chest and a bullet wound in the knee that exited in the rear.

Officer Knox testified that he recovered six .38 caliber slugs from inside the house and identified certain pictures of the interior of the house.

Officer Robinson testified that he arrested the defendant at approximately 5:00 p. m. on July 18, 1972. A .38 caliber revolver was found on defendant's person. Defendant was advised of his Miranda rights and after acknowledging that he understood his rights, denied being involved in any shooting. Defendant asked the officer "how his Uncle was." The officer replied that his uncle was going to be all right whereupon the defendant stated "I guess I'm not a very good shot." (Tr. 47) Defendant had been drinking, but was not intoxicated.

Detective Guinn testified that he advised the defendant of his constitutional rights and interrogated him in the City Jail on July 19. Defendant stated that he and Faggett had gotten into an argument, Faggett made a move toward a cabinet drawer which contained knives and a hatchet. He felt that Faggett was going to get a weapon and he pulled his gun and shot him first.

For the defense Anna Roberts testified that she was defendant's grandmother and Faggett's mother. She testified that on a previous occasion defendant and Faggett got into an argument and Faggett tried to hit defendant with a hammer until she stepped between them; that Faggett

and the defendant did not get along and that Faggett blamed the defendant for everything that happened. She testified that she kept knives and a hatchet in the kitchen drawer.

Walter Roberts testified that he was Anna Roberts' husband and Faggett's stepfather. He told of previous arguments between defendant and Faggett. He was sitting on the porch when the shooting occurred. He observed defendant shoot at the front of the house from the yard.

Florene Williams, the defendant's mother, testified of previous arguments and trouble between defendant and Faggett.

Defendant testified that on a previous occasion Faggett tried to strike him with a hammer; that on the afternoon in question, defendant drank some water from the icebox and went into the living room. Faggett came to the kitchen door and accused defendant of drinking his water, which defendant denied. Faggett came toward him with a long fork in his hand. He pulled his pistol and shot toward Faggett's arm. Faggett dropped the fork and started toward a drawer in the kitchen. Faggett opened the drawer and reached in, grabbing the handle of a hatchet. He shot at Faggett's leg. Defendant went outside and shot two or three times from the front porch "just trying to keep him from coming out." (Tr. 83)

The first proposition asserts that the verdict is not supported by the evidence. We have consistently held that where there is competent evidence in the record from which the jury can reasonably conclude that the defendant was gulty as charged, this Court will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805.

The final proposition contends that the punishment is excessive. Suffice it to say that the punishment imposed of five (5)

years is well within the range provided by law and does not shock the conscience of this Court.

The judgment and sentence is affirmed.

BLISS, P. J., and BRETT, J., concur.